We'll move on to the last case set for argument this morning, which is Paniolo Cable Company v. Farmer. That's case number, well, actually Clearcom v. Farmer. It's In Re Paniolo Cable Company. Case numbers 25-2899 and 25-2900. Good morning, Your Honors. May it please the Court. I'm Addison Bonner. I'm here for Appellant Clearcom, Inc. I'd like to reserve five minutes for rebuttal. We're here about due process, and in our view, Clearcom didn't get due process in this case for two main reasons. First, this case was decided against Clearcom on a summary basis. We believe that was improper. Second, with the jerkacy ruling, we believe that this matter, you know, our client was entitled to a jury trial in this matter, and that also didn't happen because...  Can you... Okay. Two issues. Number one, don't you have a duty to preserve... I mean, you agree that no jury trial was asked for below, right? Yes, I do. So what is it about jerkacy that would have changed that? I mean, wouldn't you have had to ask for a jury trial? That seems pretty fundamental. So jerkacy basically changed the entire framework for, and I think it's still playing out now, for how this is going to work going forward because we've got an Article I court that the case is assigned to, and prior to jerkacy, yeah, it would go to that court and we're stuck with that court. But now with jerkacy and with the new rulings that are coming out, you know, if this applies to administrative agencies, this also applies to the bankruptcy court, is our position. There's a new framework, and jerkacy came out in June of 2024. Our case was decided in May of 2024. So there's no opportunity to preserve during the... When we had this with the bankruptcy court. So the implication of your argument on this point, correct, is that the bankruptcy court no longer has the ability to do any dispositive motion rulings. I think to the extent that the two-part test in jerkacy is met, that is true. I mean, I think, you know, there are certain... And I can go through that analysis. In this case, we believe this is basically state law claims, common law claims, common law remedy, and so the Seventh Amendment applies. This is a private rights case. Could you consent? Could you consent to the jurisdiction of the bankruptcy court? People consent all the time to the jurisdiction of magistrates and are entitled to an Article 3 court if they wish it. I think... I guess it is a novel issue given the change in the framework. Why is this novel? People have waived juries for years. I suppose... I'm just saying there's a new framework, right? And so... But why is there a new framework? Why does that really alter the framework? It may alter the framework if a jury has been requested as to whether the administrative agency has jurisdiction to proceed if a jury has requested. But you didn't request a jury here. Previously, that just wasn't an option that was available to us being in the bankruptcy court. But that's not true because you always have... If you have a claim that is connected to the right to a jury, you always have the ability to ask to be sent to the district court and out of the bankruptcy court to preserve that jury right. That isn't true. You didn't need jarcossy here to preserve a jury claim. Our view, I guess, we respectfully disagree. It might have heightened your awareness. But it didn't... If you at any time had said, you know, we think we've got... I think we'd like to have a jury here, you could have requested one. Maybe the bankruptcy court would have declined it, but then you might be here and this would be an entirely different argument. I do understand your position. Your position is that you cannot waive a jury before a bankruptcy judge and request a bankruptcy judge to resolve the questions? I suspect that we would be able to waive it. I don't think the law has been decided or is clear on that issue. But if you can waive it, why haven't you waived it here? Why haven't you forfeited it? Well, our view is that it wasn't an option that was available to us prior to this new decision. Going back to the first portion with respect to the summary judgment, this comes down to the existence of three agreements and a settlement agreement. The trustee's position was that ClearComm violated the settlement agreement due to the existence of these three agreements. And the evidence that was presented on that were the agreements themselves and our position and some declarations related to those agreements. With respect to the summary judgment, the trustee's position was that ClearComm violated the agreements. Our position is those documents were clear on their face. The first two agreements, the Master Services Agreement, that's a 2013 agreement, it had a three-year expiration period within it. And so it would have expired by 2016. Prior to the date the settlement agreement was entered into, I believe that was March of 2020, where ClearComm attested that there were no agreements. And so you're right that it had a 36-month expiration period, but it also said that that had to occur with written notice. Did you provide written notice? I don't believe that's in the record, Your Honor. However, our position on that is we're the defendant here, and it's not our duty to prove when certain things happened. If they're going to take the position that this agreement is still valid, if you're going to say, I'm not sure that's totally true. I mean, you're arguing that the agreement is not valid any longer, and if you're going to read the terms of the agreement, it says, well, it expires on 36 months with written notice. If there's no evidence of any written notice, then the assumption is that the agreement is in play. Well, to counter that, we did put in the declarations of representatives of ClearComm. And on the reconsideration piece of this, we also secured the declaration of... That written notice was provided? Not on the written... It doesn't specifically say that written notice... That's what I'm... I mean, I'm asking about the written notice. Is there any evidence that that term was complied with to terminate this contract? I don't believe there's evidence directly on that point in the record. However... So, Dindy, what's your position on that, that it doesn't require written notice? Correct. By the actions of the parties, the agreement terminated on its face. So here's, I mean, I understand the arguments that you've made under multiple of these contracts about their terminations, and I think that there's arguments to be made there. But setting that aside, my understanding is that in the record, it demonstrates that payments that were made under these contracts continued after the termination dates that you're advocating for under the terms of the contract. So when that's true, I don't understand the termination argument at all. If payments continued to flow, then that is pretty concrete evidence that there was not termination of either of these agreements. Our position is the payments continued to be made, but they're not under the expired agreements. They're under... They're kept kind of in same sort of payment structure, same sort of character, same sort of from the same person to the same person as before and after. So what tells us that those payments were being made under some sort of different agreement? That would be the declarations of the Clercom representatives and Mr. Santos' declaration. And essentially, what we're talking about here is there's a new agreement that was put into place thereafter. What's the evidence of that? You know, it's difficult for us to kind of... The trustee's theory of the case that is just a continuation of these old agreements. Our position is no, there are other agreements and there's a new agreement. Didn't you have to put into evidence what those new agreements were? We did put in the 2021 agreement. We did put that in and there's evidence in the record. In our view, that's enough to have a trial on the issue because there's conflicting evidence about what these agreements mean and even ignoring the termination issue. We're talking about the 2021 agreement and payments made there under and what those payments were made for. Our position is that wasn't for the Paniolo Cable Network. And that's the only asset that the trustee had control of. And their argument works if payments were made for use of the Paniolo Network in violation of the settlement agreement. But our position is those payments were not for the Paniolo Network. I don't think our obligation is to put in the specifics for them because it's their case. All we have to do is put in evidence that says, no, you guys are... Your theory is wrong and there are other agreements and... You're just hanging your hat on making those termination arguments under the temporal provisions of the contracts. Because I don't see in the record an explanation for why it would make sense to conclude that the payments that look the same continuing after you're advocated for termination dates, like why we should assume that those are coming from some other obligation other than just continuation of these contracts. And it's the ClearCom representatives, the He's, Albert and Wendy, they put in information to the contrary there. And what happened was our position is the bankruptcy court improperly made a credibility judgment and basically said, you know what? I don't believe that. And if the court doesn't believe it and ignores those declarations, well, okay then. I mean, then that's, you know, that's why the outcome is the way it is. But we believe that was improper. And that's... Wouldn't a new agreement have violated the settlement agreement? The new agreement... You can get around the settlement agreement. The settlement agreement was just that we don't have any existing contracts and as soon as you sign that agreement, you can enter into new ones anyway? The agreement provided we didn't have rights to the Paniolo Cable Network. And so the new agreement doesn't relate to the Paniolo Cable Network in terms of it's not selling access on that network. It did. The old agreement did. The old MSA did, right? It did. Yes. Yeah. But the new agreement specifically doesn't refer to the Paniolo Cable Network. It's other infrastructure, licensed infrastructure that ClearCom had access to. So that's our position, that the court just went ahead and ignored all of that. I'll go back and look at those declarations, but you keep referencing that there's declarations that say that these were under new agreements. Specifically what do they say? Because like, we paid you, you know, I'm going to make up numbers. We paid you $1,000 a month for access to the network. And then we terminated our agreement on this date. We continue to pay you $1,000 a month, but we're paying you for something else now. And just take our word for it. I can't tell you any details about what the new agreement is or whatever. So what are they saying? They're continuing to pay the same amount for something different. Right. And it's for the use of different networks. You don't have a contract to show that. The 2021 agreement is not, it makes it clear that it's not about the Paniolo Cable Network. And so it doesn't have detail about what specific network we're talking about. But it's not the Paniolo Cable Network because that agreement was made after the settlement agreement and ClearCom was aware of, you know, the terms of the settlement agreement. So that agreement in particular was done afterward. I thought in the record that ClearCom admitted that even the 2021 agreement related to the Paniolo Network. So that is what the trustee's argument is. But that's if you look at what it stands on and what and what support for that there is, it's not really there. It basically relies on an interrogatory response that asks for disclosure of documents that essentially may relate to the Paniolo Cable Network. And so that agreement was put into that category, but that's not a, it's not an admission like admit that this agreement is selling access on the Paniolo Cable Network. I mean, that's not what we're saying there. All we're doing is providing discovery responses. This agreement is, you know, it's part of the series of agreements between Charter and ClearCom, but it's not an admission that this is selling access on the Paniolo Cable Network when the agreement itself doesn't say that. So that's our position because there is this ambiguity here. There is this factual issue that should not have been decided by summary judgment. And that affects both the liability portion and the dollar damages because of this payment issue. So I want to make sure that I give fair consideration to the argument you're making. Can you point me specifically into the record where you think I'm going to find evidence that would create a question of fact, that there was new agreements, that the continued payments were being made under, and that those agreements don't breach the settlement? Yeah. And I'm sorry, I can't refer to numbers, but I will tell you it's the Declaration of Albert He, it's the Declaration of Wendy He, and on the reconsideration portion, we submitted the Declaration of Norman Santos, a former employee of Charter. Thank you all. May I reserve? Yeah. Please, the court, my name is Jonathan Bolton, and I represent the appellee David Farmer, the plaintiff and the underlying action plan agent. Mr. Bonner started his presentation talking about due process. And as you can see from the record in this case, ClearCom was given every chance along the way to make arguments, but as you see from the record, their arguments kept changing. Over time, we started out with a straightforward argument where they said, well, okay, we received the money, but we gave the money to SIC. It wasn't ClearCom. We used the cable, but we gave it to SIC. But over time, this argument has morphed, and then today, you're hearing arguments about how these contracts terminated. And again, this argument was only brought up, I believe, in connection with the motion for reconsideration, the first time it was ever presented to the court. So we've objected to these arguments being presented because everything they've done on these arguments about the contracts being terminated was late. Okay. So if we're going to look at these, Albert and Wendy and Santos, I don't know if I have those names right. Yes, sir. Look at those declarations. Your first argument is you can't look at those because those all were brought on reconsideration and the district court did not abuse its discretion by saying you could have had this evidence beforehand. To be precise, Your Honor, the he declarations were presented with the sir reply. The Santos declaration was only presented in the motion for reconsideration. I see. So they could, if we looked at the Albert and Wendy declarations, the reconsideration argument wouldn't apply to that. The fact that that was presented, okay, maybe I misunderstood you. I thought you said those were presented with the actual original motions. Well, on the sir reply, Your Honor. Remember, we're the plaintiff. We had a reply. Did the district court consider that information? Judge Ferris gave them the ability to file a sir reply for limited purposes and in that sir reply, which was meant to only deal with the damage adjustment, that's when the he declaration. Did he make a finding? Well, go ahead. I'm just saying, did the district court consider that new information submitted with the sir reply? You mean the BAP, Your Honor? Yes, sorry. Or Judge Ferris, the trial judge. The trial judge, where the motion was made. It's unclear because we did object to those coming in because it was only filed in connection with the sir reply. Right. Judge Ferris didn't specifically grant our motion to strike that sir reply, but I think impliedly he granted it because he said it was late, it was beyond the scope of what I allowed you to file in the sir reply. I think he did look at them and consider it. If he did that, would you agree that we have discretion in terms of whether we apply a forfeiture or not? Yes, Your Honor.  You would. Santos is the only one that, well, regardless, there are two different issues because two different procedural issues. One is the sir reply issue, which applies to the first two, and the Santos issue, it's the reconsideration issue. That's your first line of defense. Correct. The second part is, for two different reasons, these three declarations are improperly before the court, and we shouldn't consider them either. What if we get into the substance of them? Help us understand why those arguments. I guess what we wouldn't really be able to look at, I guess we technically could, but if we thought that they were properly before us, and I say district court, the lower court hadn't looked at this properly, wouldn't the better course be to remand to look at that and see whether that created a new contract? Well, I think if you look at what those declarations say, and Judge Ferris pointed out, and the panel already pointed this out, there was admissions by ClearCom all the way along about, for example, use of the Paniolo Network. That is what they were trying to contest in the declarations, primarily was the fact that it wasn't the network that was being used. But there was so much evidence before Judge Ferris when he considered this that he said, look, even those declarations that you gave me in connection with the motions that were timely were so contradicted by the contemporaneous facts in the emails, the language of the contracts, and the admissions, that I believe he cited Scott V. Harris to say, look, there's no reasonable jury would believe with all this evidence I have in front of me what you're trying to say in these late declarations that are so late in the game. So I think likely, if it was remanded, he would apply the same kind of reasoning because you have all this other evidence that's really overwhelming when you look at it compared to these new arguments that are coming up with that are late in the day. Are we reviewing that, do we review that de novo or abuse of discretion? I think, I believe the standard for a motion for reconsideration is abuse of discretion. Well, that's for the motion for reconsideration, but for the original one, I mean, I guess it gets into, again, I'm setting your procedural arguments aside. For the original two, we would be looking at that de novo, wouldn't we? I think for factual determinations, it would be an abuse of discretion, but otherwise de  Well, at best, you've got a mixed question of fact and law, I suppose. I would agree with that, Your Honor. Turning to, I think counsel admitted on the record here today that the master services agreement does relate to the Paniolo Network, and he really had to, when the panel asked him about that, because that's what the admissions say. Now, he did try to argue that the 2021 agreement did not relate to the network, but I point the court to the record at page 369, which is their opposition to the motion for summary judgment, and I'll quote it for the panel. They said in their opposition, quote, ClearCom received monies from charter for its emergency use of the Paniolo Cable Network under the October agreement and the 2021 agreement. So they've admitted in their own pleadings. So to come here today and say it wasn't related, they've already admitted that. So I don't think they can take a position different with you today. That's all I have, Your Honor, unless you have questions. Okay. Thank you. Thank you.  Just briefly addressing that last point, that, you know, quote, unquote, admission, that's not the end of the matter. I mean, we're talking about how much and damages, right? And so it's their case. They have to show how much of this payment was related to use of the Paniolo Cable. And that's why I think, you know, summary judgment was inappropriate. There's multiple agreements at issue. Some monies were paid in connection with the Paniolo Cable and some monies were not. But you agree that, I mean, the district court, the lower court rejected that argument, that there were multiple agreements. Or your position is it didn't consider it. My position is it considered it and made an improper determination based on credibility. Basically, seeing itself as the judge of both the law and the facts, it just went ahead and skipped right to the end of the case. And that's improper. That's what our position is. Are there two separate declarations for Wendy Yee and Albert Yee? Yes. Can you point me in the record for the Wendy Yee? I'm not seeing it. So, attached to the certify, there should be the declaration of Albert Yee. Wendy Yee would have been submitted in connection with an opposition on the summary. Well, they're not in separately. Because I see in Volume 4, 938 to 41, I see the declaration of Albert Yee. Is that what you're relying on? Or do I need to go to one of the briefs? Yeah. My recollection is that declarations were submitted in connection with both summary judgment motions. And so, that's where they would be as well. The Santos Declaration was submitted only in connection with the motion for reconsideration? That is true. And it's just three pages? Yes. Two and an eighth? That's right. And what am I supposed to get out of the Santos Declaration? So, the reason we had to go there was the court basically, in its rulings, made a credibility determination that the He's were not credible. And we thought that was improper. So, we went to go to get someone else who wasn't one of the He's, who was a former charter employee. And basically, he said the same thing that the He's did. So, initially, it wouldn't have made sense for us to get that declaration because it's duplicative of what the He's are going to say. But if he's going to, I think, improperly make a credibility… I don't see anything in here that relates to the 2021 agreement. I see that it relates to the MSA, to the 2013 MSA and to other agreements. I don't see anything in here about 2021.  And I think, you know, part of what it was, was when we got this declaration, he was a former employee at that point. It just seems very, very general. I'm just, I'm looking at it now. I've highlighted things that I looked at earlier and have circled things. I'm not sure what I'm supposed to get out of this, as I sit here today in this argument. Essentially, it's largely to say that, hey, this shouldn't be a credibility contest. Here's a… He doesn't refer to the He's. And he's referring to everything that is prior to the settlement agreement. He's not referring to anything that occurs after that. So, it doesn't seem to help me at all with understanding what happened after you entered into the settlement agreement and these payments continued. I mean, there's just no detail here whatsoever. I understand that. And largely, it had to do with addressing the credibility concern in the trial court's mind. But the credibility concern as to what, at most, the 2000 through 2013 agreements. Right. And again, you know, it's a limitation. So, it doesn't help you at all? We believe it does.  So, all right. I'll have to track down this other stuff because I can't find the Wendy Yee. Declaration. So, I don't know if you could point us to that. Let me take a look. I'm not right this minute. Okay. So, I have one follow-up question with regard to something you said before. And that is that the interrogatory answers are not as definitive as your friend across the aisle wants to make them seem. So, I want to give you a chance to deal with that. So, here's the interrogatory request. Identify all agreements entered into by you and or SIC and or YMANA relating or referring to the use of or access to the Paniola Cable Network. And then there's a list. I mean, you objected to the interrogatory. But then there's a list of contracts that include the ones that we're talking about. So, I guess, what is the wiggle room in that interrogatory request that indicates that the response is not saying these contracts relate to this service that we've been talking about? So, our view is the response is provided subject to the objections. And largely, this list of contracts was put forward just to make sure we're covering our basis. It's not put forward to say, hey, here's an agreement that relates exclusively to the Paniola Cable Network. Now, to the extent there's other evidence that maybe a payment or two were made with respect to the Paniola Cable Network, okay, fine. And that's what that was meant to cover and to prevent a situation where they're accusing us of withholding documents or just doing anything improper with discovery. Our position is that's not an admission that all payments made under all these agreements relate to the Paniola Cable Network. But some do, and so wouldn't that be evidence of breach? So, to the extent they can show that some do, then perhaps it is evidence. So, is your argument here that summary judgment shouldn't have been granted in terms of, and maybe you've said this, as in terms of what the damages are related to the breach and not the fact of breach? Yeah, I mean, our argument is as to both, but I think they merit separate consideration, both on the liabilities. I don't know how you, I mean, I don't know how you make the argument that there isn't enough evidence for summary judgment of the fact of breach, given, I mean, the interrogatory is pretty straightforward and the response is pretty clear in terms of here's a list of contracts that all relate to the Paniola Network. Right, and our position is, you know, that doesn't mean that they relate exclusively to that network. Okay, so that would go to damages, but not the fact of breach. I mean, I guess I view it slightly differently, but I understand your argument. Albert He, the declaration, the only one I see in here, and maybe you're referencing a different one, is in volume four, ER 942 to 50. That was signed in November of 2019. You must be referencing a different one, right? Because your position is Yee's declaration shows that the agreement extended beyond 2021. Right, and, you know, potentially that's a typographical error, but... Well, are there two declarations? My recollection is there are multiple declarations, yes. All right, well, we'll take a look at it. Anything else to sum up? Thank you for your consideration. Yeah, thank you. Thank you to both counsel for your arguments in the case. The case is now submitted and that concludes our arguments for the day.
judges: BYBEE, NELSON, FORREST